WILLIAM SOUREAL et al. v. CECELIA BLOOMFIELD WISNER et al., Appellants.—13 S. W. (2d) 548.

Division One, February 1, 1929.

*Major J. Lilly* and *Redick O'Bryan* for appellants.

*Willard P. Cave* for respondents.

GENTRY, J.—This suit was instituted on September 10, 1925, in the Circuit Court of Randolph County, and is a statutory contest of the will of Josephine Bloomfield, deceased (hereinafter for convenience called testatrix), who resided for many years immediately preceding her death in the city of Moberly, in Randolph County. The plaintiffs, William Soureal and Pearl Davis, are respectively son and granddaughter of testatrix; defendants Cecelia Wisner and Laura Neal are daughters of testatrix, and defendant Daniel Bloomfield is a grandson of testatrix. The petition is in the usual form and alleges that testatrix was the owner of real estate and personal property in excess of $15,000, and it further alleges unsoundness' of mind on the part of testatrix; that the execution of the will was procured by fraud and undue influence on the part of Cecelia Wisner, and that confidential relations existed between said defendant and testatrix at the time of the execution of the will. The joint answer of defendants Wisner and Neal consisted of a general denial, and an allegation that

the will had been executed in due form, duly attested by two witnesses, etc., and prayed that the same be established as the last will and testament of testatrix. The separate answer of defendant Bloomfield, made by his guardian for him, consisted of a general denial. A trial before a jury resulted in a verdict setting aside the will, and defendants have appealed.

The will in question was written by Jerry M. Jeffries, a member of the Randolph County Bar, and witnessed by him and C. A. Selby, a Moberly merchant. The will is as follows:

"Know all men by these presents, that I, Josephine Bloomfield, of Moberly, County of Randolph, and State of Missouri, do make, ordain, publish and declare this to be my last will and testament.

"First: I order and direct my executrix hereinafter named to pay out of my estate all of my just debts and funeral expenses.

"Second: I will, give, devise and bequeath to my grandson, Daniel Bloomfield, son of my deceased son, Daniel Bloomfield, the ground and building at Number 219 North Clark Street, in Moberly, Missouri, same being Lot 9, Block 6 of the Original Town of Moberly, Randolph County, Missouri, having heretofore deeded the same to my son, Daniel Bloomfield, but reserving to myself a life use of said property, by these presents I confirm said deed and direct that my said grandson receive no further sum from my estate.

"Third: Having heretofore on this day deeded and conveyed to my daughters, Laura Neal and Cecelia Bloomfield, Lot 8, in Block 6, Original Town, now City of Moberly, reserving to myself a life use of same and providing that on the death of either of them before my demise, the same should revert to me, I hereby ratify and confirm said conveyance.

"Fourth: To my son, William Soureal, of Monroe, Louisiana, his heirs and assigns, I will and give the sum of $250 and no more.

"Fifth: To the heirs of my deceased daughter, Della Soureal, if there be any surviving heir, I will and give the sum of one dollar and no more.

"Sixth: To my granddaughter, Pearl Davis, I will, give and devise and bequeath the sum of six hundred dollars and no more.

"Seventh: To my beloved daughter, Cecelia Bloomfield, I will, give, devise and bequeath all of my jewelry, my household and kitchen furniture and my seven shares of the capital stock of the Mechanics Savings Bank of Moberly, Missouri.

"Eighth: All the rest and residue and remainder of my estate of whatsoever character and kind and wherever located, real, personal and mixed, I will, give, devise and bequeath to my beloved daughters, Cecelia Bloomfield and Laura Neal, in equal parts share and share alike.

"Ninth: I make, constitute and appoint Cecelia Bloomfield to be executrix of this my last will and testament, hereby revoking any and all former wills and codicils made by me.

"In witness whereof I have hereunto subscribed my name and affixed my seal this 5th day of April in the year of our Lord, 1920.

her

JOSEPHINE X BLOOMFIELD.

mark

"Witnesses: JERRY M. JEFFRIES,

"C. A. SELBY."

The defendants' evidence tended to show that a day or two before the execution of the will, testatrix went to the office of Mr. Jeffries and talked to him about the preparation of the will; she was accompanied to his office by her two daughters, defendants Wisner and Neal. These defendants did not remain in the room while testatrix was talking to Mr. Jeffries. After making notes, Mr. Jeffries agreed to prepare the will and bring it to testatrix for execution. Someone gave Mr. Jeffries the description of the property, but he was uncertain who it was, either testatrix or one of her daughters. Testatrix was a native of France, and while she learned to speak the English language, she was not able to read or write English, and never able to sign her name. In a day or two, Mr. Jeffries visited the apartment where testatrix lived, which was upstairs over a store building owned by her in Moberly, and which was the home of defendant Wisner as well as of testatrix. Mr. Jeffries read the will to testatrix, and then C. A. Selby was called in, when the will was signed by testatrix, making her mark, and the two witnesses attested the same in her presence. Mr. Selby was called from across the street by one of the defendants; and when he reached the top of the stairs, one of them said to him, "Come on up Charlie, mother wants to see you. She is in the front room." To him testatrix stated that she was fixing her will since her son had died, so that her son's wife would not get any of her property. The will was executed one year and a half after the death of the son of testatrix. The will was not read over to Mr. Selby. Both Mr. Selby and Mr. Jeffries testified that the mental condition of testatrix was good at that time.

Testatrix was twice married, both husbands being dead. At the time of the execution of the will, she was sixty-five or seventy years old, her exact age being uncertain. Plaintiff Soureal is a son by the first husband of testatrix, and plaintiff Pearl Davis is a daughter of a daughter by the first husband. The two defendants Wisner and Neal are daughters by the second husband, and defendant Daniel Bloomfield is a son of a son by the second husband.

After the formal proof of the will by defendants, the plaintiffs offered evidence tending to show that defendant Wisner was the confidential agent of testatrix, wrote all her checks for her, paid her taxes, and generally attended to her business. Testatrix and defendant Wisner lived together for some years prior to the execution of

the will and until the death of testatrix. For some years, testatrix suffered with her eyes and finally became practically blind; then she had a fall which resulted in the dislocation of her hip. Some two years after the execution of the will, it is conceded that testatrix became of unsound mind and a guardian was duly appointed for her. Some evidence was offered by plaintiffs to the effect that testatrix was of unsound mind prior to the execution of the will.

The defendants then offered evidence to the effect that testatrix was of sound mind at the time of as well as before and after the execution of the will and until a short time before a guardian was appointed for her. But the evidence of defendants showed that confidential relations existed between defendant Wisner and testatrix; that they lived together for some two years prior to the execution of the will and until the death of testatrix. After testatrix became physically disabled defendant Wisner waited on her almost constantly. Testatrix executed two or more wills prior to the execution of the one in question.

I. Learned counsel for appellant insist that error was committed in submitting to the jury the question of undue influence on the part of the defendant, Cecelia Wisner. It must be remembered that the petition not only alleged undue influence on the part of this defendant but it further alleged that said defendant "at the date of said alleged will and for a long time prior thereto, was the trusted and confidential advisor, agent and manager of and for the said Josephine Bloomfield."

The law on the subject of will contests has often been stated by this court; the burden in the first place is on the proponents to show the proper execution and attestation of the paper as well as the soundness of mind and legal age of the testator. These established, a prima-facie case is made; and the contestants then have the burden of proving unsoundness of mind or undue influence. [Schierbaum v. Schemme, 157 Mo. l. c. 16; Doherty v. Gilmore, 136 Mo. l. c. 419-20.] Undue influence, like fraud, is never presumed, but must be proved. [Maddox v. Maddox, 114 Mo. l. c. 46; Carl v. Gabel, 120 Mo. l. c. 296.] But when confidential relations are alleged and established by the evidence, the burden shifts to the defendant occupying such relation and such defendant must then show that no fraud or undue influence was exercised. This is true when a son or daughter occupies a confidential relation such as business agent of a parent and such son or daughter receives a large part under the will. [Mowry v. Norman, 204 Mo. l. c. 189; Gay v. Gillilan, 92 Mo. l. c. 263; Dausman v. Rankin, 189 Mo. l. c. 703; Marx v. McGlynn, 88 N. Y. 357; Kuehn v. Ritter, 233 S. W. (Mo.) l. c. 6; Byrne v. Byrne, 250 Mo. l. c. 646; Canty v. Halpin, 242 S. W. (Mo.) l. c. 96; Grund mann v. Wilde, 255 Mo. l. c. 116.]

In speaking of a fiduciary relation as affecting the execution of a will, Judge WOERNER says: "Proof of existence of such relation raises the presumption of undue influence, which is fatal to the bequest unless rebutted by proof of full deliberation and spontaneity on the part of the testator, and good faith on the part of the legatee." [1 Woerner's Am. Law of Admr. (3 Ed.) sec. 32; 1 Underhill on Wills, sec. 137; Page on Wills, secs. 413-14; Gardner on Wills, pp. 167-9.] And SCHOULER says, "However, it has been held that where a confidential relation exists between the testator and the legatee the activity of the legatee in procuring the will imposes upon the proponents the burden of proving that it was not the result of undue influence." [1 Schouler on Wills, sec. 307.]

In the instant case, the evidence showed that testatrix was of French birth, that she could neither read nor write the English language, that for some time prior to the execution of the will, defendant Wisner lived with testatrix, kept the papers of testatrix, paid her taxes and wrote and signed checks for her; and, some of the witnesses said, attended to all her business. True, the name of testatrix was written to these checks, but testatrix made her cross-mark, the writing being done by defendant Wisner. Testatrix was suffering with her eyes and was nearly blind, and defendant Wisner made arrangements with the attorney for the writing of the will, and she and defendant Neal accompanied testatrix to the lawyer's office when instructions were given him regarding the preparation thereof. The evidence is not satisfactory as to how the attorney procured the numbers of the lots described in the will; he admits he did not obtain the same from testatrix, but he and the two defendants could not remember how he did obtain such descriptions. A day or two later, the will was executed at the home of testatrix, and the two favored defendants were present at the home at that time, and arranged for C. A. Selby to come and witness the will; but the two plaintiffs were miles away and knew nothing of the preparation or execution thereof. These circumstances, confidential relations existing, in connection with the fact that the two defendants received the major portion of the estate, were sufficient to make a prima-facie case of undue influence.

The evidence shows that the two defendants, and especially Mrs. Wisner, were kind and attentive to testatrix after she became blind and after the dislocation of her hip, waiting on her daily and sometimes hourly. We do not wish to be understood as holding that these acts of kindness constituted undue influence: but we do hold that the confidential relations that existed at the time of the execution of the will and the circumstances above detailed justified the submission to the jury of the question of undue influence.

II. As stated, the petition alleged unsoundness of mind on the part of testatrix, and the evidence showed that some time after the execution of the will, testatrix became of unsound mind and a guardian was duly appointed for her. As to the condition of her mind at the date of the execution of the will (April 5, 1920) it is claimed by appellants that there was no conflict in the testimony, that it all tended to show testatrix was then of sound mind.

There being two reasons assigned in the petition why the will should be set aside, it was the duty of defendants to properly controvert both reasons and to ask instructions that submitted both issues to the jury, if defendants wanted to preserve such questions for review by this court. At the close of the plaintiffs' evidence, the defendants offered the following peremptory instruction.

"At the close of plaintiffs' evidence, the court instructs the jury that under the law and the evidence your verdict will be for the defendants, and in that connection you will find that the paper writing introduced in evidence is the last will and testament of Josephine Bloomfield, deceased, and your verdict will be in the following form:

"We, the jury, find that the paper writing, introduced in evidence, is the last will and testament of Josephine Bloomfield, deceased."

A similar peremptory instruction was offered by defendants at the close of all the evidence. The question calling for decision is, are the defendants, in this condition of the record, entitled to have this court pass on the question of the sufficiency of the evidence regarding the unsoundness of mind of testatrix? It will be seen, from point one, of this opinion, that there was sufficient evidence to justify the jury in finding against the will because of undue influence; hence, the trial court properly overruled the demurrer offered at the close of plaintiffs' evidence and also at the close of all the evidence. If such demurrer had been sustained, the same would have constituted error, as there was sufficient evidence to go to the jury on the question of undue influence. It was the duty of defendants, if they wanted both points saved for review in this court, to have offered a separate demurrer on each branch of the case, and in that way procured a ruling from the trial court which could be reviewed by this court. We must presume that the trial court overruled this demurrer for the proper reason, there being evidence sufficient to take the case to the jury on the question of undue influence; and we must presume that the jury found against the will for the same reason. [Torrance v. Pryor, 210 S. W. l. c. 432-3; Miller v. Prough, 203 Mo. App. l. c. 413; Rosemann v. Railroad, 197 Mo. App. l. c. 342; Latham v. Hosch, 207 Mo. App. l. c. 388.]

III. Instructions one to six were given by the court on its own motion, and an instruction was also given regarding the majority verdict and the form of the verdict. At the request of plaintiffs, instruction numbered seven was given, which declared the law on the subject of confidential relations, and the presumption that such relations unduly influenced testatrix. The record does not show that defendants asked any instructions, save the demurrer to the evidence above mentioned, which was overruled.

In their brief, appellants (defendants) do not point out any error in these instructions, and we have been unable to discover any error in them. Graves, J., in behalf of this court, said that it is the duty of appellant's counsel to point out such errors, and upon failure to do so, the court will not attempt to discover errors therein. [Yant v. Charles, 219 S. W. l. c. 574; Elliott on Appellate Procedure, secs. 299-309.] Counsel content themselves with saying that there was no evidence sufficient to justify the giving of said instructions; but the reading of the instructions discloses the fact that they properly defined the issues in a will contest such as this. If the defendants wished additional instructions, they should have made request therefor; non-direction not being misdirection. [Morgan v. Mulhall, 214 Mo. l. c. 463; Fisher v. Transit Co., 198 Mo. l. c. 591; 2 Thompson on Trials, sec. 2396; 1 Brickwood Sacket on Instructions, sec. 156.] In Norris v. Railroad, 239 Mo. l. c. 717, we said:

"In the trial of civil cases, many important duties rest upon the attorneys for both plaintiff and defendant, among which is to aid the court in giving to the jury all the instructions which they need to enable them to arrive at a correct verdict; and the unsuccessful litigant is not entitled to a reversal because the instructions given at the request of his adversary do not cover all the points upon which instructions should have been given, unless such unsuccessful litigant has prepared and requested proper instructions on the points about which he complains." [Tethrow v. Railroad, 98 Mo. l. c. 86.]

IV. No complaint is made by appellants regarding the admission or rejection of evidence; and after carefully reading the record, we are convinced that the trial court evenly held the scales of justice and fairly presented the issues to the jury. The judgment is affirmed. All concur.